**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| **EMMA VICTORIA HOWARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **1:10CV47** |
| | ) | |
| **U.N.C. HEALTH CARE SYSTEM,** | ) | |
| **et al.,** | ) | |
| **Defendants.** | ) | |

**ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter comes before the Court on several motions, including (1) Defendants'
motion to dismiss filed April 8, 2010 (Docket No. 17); (2) Plaintiff's motion to amend
complaint "to Enter Federal Question" filed June 25 (Docket No. 25); and (3) Plaintiff's
motion "for Substantial Evidence" filed July 13 (Docket No. 26). Plaintiff has responded in
opposition to Defendants' motion to dismiss. The motions are ready for a ruling.

**The Complaint**

In the opening paragraph of her *pro se* Complaint, Plaintiff Emma Victoria Howard
states that "[t]his is an action under Title VII of the Civil Rights Act of 1964, to correct
unlawful employment practices on the basis of race, and to provide appropriate relief to Pro
Se Plaintiff . . . who was adversely affected by such practices." (Docket No. 2, Complaint
("Compl.") at 1.) She proceeds to invoke rights under Title VII, 42 U.S.C. § 1981, and 42

U.S.C. § 1983.  As Defendants, Plaintiff identifies U.N.C. Health Care Systems ("UNC Health Care"); Norman Klase, in his official capacity; Susan Phillips, in her individual and official capacities; Patt Sturdivant, in her individual and official capacities; Gail Walker, in her individual and official capacities; and Bonnie Overman, in her individual and official capacities.

The *pro se* Complaint is a rambling and disjointed document, but the essential contours of Plaintiff's legal claims are clear.  Plaintiff alleges that, while she was employed at UNC Health Care, Defendants Phillips, Sturdivant, and Walker issued  several write-ups against her based upon inaccurate and/or untruthful information, resulting in her termination.  The write-ups occurred in 2007, and Plaintiff was terminated on November 16, 2007 "via telephone."  (Compl. at 2.)  Plaintiff says that she filed a "discrimination complaint" with Defendant Overman on August 14, 2007, but she did not receive a response from the Defendant.  Plaintiff alleges that when Barbara Johnson was first hired, Defendant Walker "singled Plaintiff out as the employee who cause[d] division between the black and white employees."  *Id.*  Plaintiff alleges that Defendant Walker taunted Plaintiff at work, talked to her in a hostile tone, and harassed Plaintiff.  Plaintiff would file a complaint with Defendant Sturdivant and not receive a response.  Nonetheless, other employees complained against Plaintiff, and a written warning to Plaintiff would be issued.  (*Id*. at 3.)

Plaintiff alleges that on several occasions white co-workers said that "they are going to work black employees like field slaves." (*Id*.) Defendant Sturdivant would tell black employees that the white employees were "just joking and meant no ill feelings." *Id*.

Plaintiff states that she and seven black employees filed a class action in March 2002 against Defendant Sturdivant and Walker. Defendants refused a mediation request. Plaintiff says that she wrote certified letters to Defendant Overman and others in 2005 through 2007, complaining of retaliation against her in the Anesthesia Support Department, but she received no responses. (*Id*. at 4-5.)

Plaintiff Howard states that she was pre-dismissed on November 14, 2007, returned for a "pre-dismissed conference" on November 15, and then was terminated via telephone on November 16, 2007. She states that Defendant Sturdivant received dismissal approval from Defendant Klase on November 15, 2007, "in reference to recent development of a police report of workplace violence, threats, or intimidation." (*Id*. at 5.) Plaintiff states that she was not aware of the police report until August 2008. Plaintiff states that she was aware of being terminated because she was alleged to have improperly changed daily work assignments of other employees. (*Id*.)

Plaintiff alleges that on November 15, 2007, Defendant Sturdivant contacted UNC Hospitals Police in regard to Plaintiff's communicating threats, and filed a "criminal report" against Plaintiff without contacting Plaintiff. Plaintiff learned of the police report during a grievance hearing on August 18-19, 2008. Plaintiff alleges that Defendant Sturdivant

"fraudulently" informed the grievance panel that Plaintiff made threatening gestures toward her at the pre-dismissal conference on November 15. (*Id*. at 6.)

Plaintiff states that Defendant Overman sent an email to Defendant Phillips, telling administrators what to say to prevent Plaintiff from receiving unemployment benefits. She states that on March 7, 2008, Defendant Phillips "conspired with administrators by email to get Defendant Mrs. Patt Sturdivant and the other **GANG** involved with NCESC hearing." (*Id*. at 8.)

Plaintiff also alleges that Defendants Phillips, Klase, Sturdivant, and Walker conspired to coerce employees to file false complaints against Plaintiff, causing her to be terminated. She states that her occupation is her property, and that Defendants deprived her of her property without due process of the law. (*Id*.) Plaintiff alleges that she has received an affidavit from Joe Edwards, attesting that Plaintiff suffered verbal attacks from Defendants during her employment. She states that she "never threatened any employee about what X-son-in law would do." (*Id*. at 8-9.)

Plaintiff alleges that she filed an EEOC charge against Defendants and the investigator gave her a right-to-sue letter without investigating. Plaintiff sent a certified letter to the investigator on October 21, 2008, but again there was no investigation. She later received a second right-to-sue letter. (*Id*. at 9.)

## Rule 12(b)(6) Standard of Review

Dismissal is proper under Rule12(b)(6) where a plaintiff fails to plead a short and plain statement of the claim showing the pleader is entitled to relief. *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). For the purposes of Rule 12(b)(6), the Court is not required to accept as true the legal conclusions set forth in a plaintiff's complaint. *District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979). A plaintiff must plead "enough facts to state a claim for relief that is plausible on its face," as opposed to merely conceivable on some undisclosed set of facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Specifically, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). The *Twombly* test applies to all civil litigation in the federal courts. *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937 (2009).

## Discussion

In response to the Plaintiff's Complaint, all Defendants have joined in a motion to dismiss. (Docket No. 17.) The motion goes to the whole of Plaintiff's Complaint and it relates to each Defendant named by the Plaintiff. For reasons set forth below, after careful consideration of the arguments of the parties, the Court finds and concludes that Defendants' motion to dismiss should be granted and that this action should be dismissed with prejudice.

1. **Plaintiff's Claims of Race Discrimination and Retaliation under Title VII**

The Court first finds that Plaintiff Howard's Title VII claims of racial discrimination and retaliation must be dismissed as untimely. Plaintiff's Title VII claims are directed toward her termination. She asserts that disciplinary write-ups that led to her termination were falsely issued and that she was terminated in retaliation for protected activities she had engaged in. Under Title VII, a claimant is required to file a complaint with the EEOC withing 180 days after the alleged unlawful practice occurred. 42 U.S.C. § 2000e-5(e)(2009). Any charge filed after the 180-day period is time-barred unless there are grounds for equitable tolling or estoppel. *See Huff v. Bd. of Governors of UNC*, 334 Fed. Appx. 583 (4th Cir. 2009); *Lane v. Lucent Technologies, Inc.*, 388 F. Supp. 2d 590, 599 (M.D.N.C. 2005).

In the case at bar, Plaintiff Howard filed her EEOC charge on October 15, 2008, attributing her termination to race discrimination and retaliation. (Docket No. 17, Defs.' Mot. to Dismiss, Ex. 1.) Since Plaintiff was on notice of her termination as of November 16, 2007, her 180-day period to file an EEOC charge expired in May 2008, long before she filed the EEOC charge. The EEOC ultimately dismissed Plaintiff's charge as untimely.[1] (*Id.*, Ex. 2.)

---

[1] Plaintiff submits an EEOC determination of October 20, 2008, finding that the EEOC was unable to conclude that the information obtained established violations of the statutes. (Docket No. 19, Pl.'s Resp. to Mot. to Dismiss, Ex. 1A.) Plaintiff wrote the EEOC and asked for further investigation. (*Id.*, Ex. 1B.) Thereafter, on December 31, 2008, the EEOC dismissed Plaintiff's charge as untimely.

Nothing in the pleadings in this matter allows Plaintiff to avoid the consequence of her untimely filing.[2] While she pleads that she only learned of a "fraudulent" police report in her file in August 2008, her EEOC charge is based upon "numerous write-ups based on inaccurate and/or untruthful information," write-ups that she knew of at the time of her termination in November of 2007. Accordingly, no lack of knowledge or information prevented her from filing her EEOC charge by May 15, 2008, as required by law. *Cf. Clark v. Sears, Roebuck & Co.*, 827 F. Supp. 1216 (E.D. Pa. 1993)(limitations period begins to run when the plaintiff knew or reasonably should have known that action was racially discriminatory).

Additionally, Plaintiff's Title VII claims in this action would be time-barred even if the tardiness of her EEOC charge of October 15, 2008, could be excused. The EEOC issued to Plaintiff its Dismissal and Notice of Rights on December 31, 2008. (Docket No. 17, Ex. 2.) Accordingly, Plaintiff's 90-day period to file suit after dismissal of her EEOC charge expired in April 2009. Plaintiff Howard filed this action on January 19, 2010. Her complaint is thus time-barred on this ground, as well. *See* 42 U.S.C. § 2000e-5(f)(1); *Yarborough v. Burger King Corp.*, 406 F. Supp. 2d 605 (4th Cir. 2005)(dismissing Title VII claim filed two days after 90 days had expired.) Plaintiff's Title VII claims should be dismissed.

---

[2]  Plaintiff argues that she remained in grievance proceedings regarding her termination long after her termination date of November 16, 2007. Nonetheless, the filing of a grievance concerning termination does not toll the 180-day limitation. *See Delaware State College v. Ricks*, 449 U.S. 250, 258-61 (1980).

**2.    Plaintiff's Claims for Damages against UNC Health Care and its Officials**

Plaintiff's claims for damages pursuant to 42 U.S.C. §§ 1981 and 1983 against UNC Health Care and the individual Defendants in their official capacities are barred by Eleventh Amendment Immunity. *See generally Quern v. Jordan*, 440 U.S. 332, 342 (1979). The immunity of the State encompasses officials of the State sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). A judgment against UNC Health Care would be a judgment against the State. *See Huang v. Bd. of Governors of UNC*, 902 F.2d 1134, 1138 (4th Cir. 1990). North Carolina has not waived the immunity granted by the Eleventh Amendment under any claim pursued by Plaintiff Howard. *Id*. at 1139. Accordingly, Plaintiff's claim for monetary damages against UNC Health Care and the individual Defendants in their official capacities should be dismissed.

**3.    Plaintiff's Claims under 42 U.S.C. § 1981**

Plaintiff's claim under 42 U.S.C. § 1981 should be dismissed as to all Defendants. The United States Supreme Court has clearly held that 42 U.S.C. § 1983 is the exclusive federal remedy for the violation of rights guaranteed by 42 U.S.C. § 1981 when the claim is brought against State actors. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989); *Dennis v. County of Fairfax*, 55 F.3d 151, 156 n.1 (4th Cir. 1995); *accord Dai v. UNC-Chapel Hill*, No. 1:02CV224, 2003 WL 22113444, at *6 (M.D.N.C. Sept. 2, 2003). Under Plaintiff's allegations, all Defendants in this action are State actors.

## 4.    Plaintiff's Claims under 42 U.S.C. § 1983

Defendants move to dismiss Plaintiff's Section 1983 claims of race discrimination, retaliation, and denial of due process upon grounds that Plaintiff is collaterally estopped from pursuing such claims by reason of the administrative appeal process she participated in as a part of her post-termination grievance.[3]  Upon review of the argument of the parties, the Court concludes that Defendants' motion is well-taken.

In *University of Tennessee v. Elliott*, 478 U.S. 788 (1986), the Supreme Court established that when a state agency acting in a judicial capacity resolves disputed issues of fact in a process wherein the parties or their privies have a full and fair opportunity to litigate, federal courts must give the agency's fact-finding the same preclusive effect in a subsequent § 1983 action as it would be entitled to in the state's courts.  *Elliott,* 478 U.S. at 799.  The university grievance process utilized by the plaintiff in *Elliott* was not distinguishable in any material way from the grievance process used here by Plaintiff Howard.  Plaintiff received a full evidentiary hearing under the UNC Health Care Step III Grievance Hearing Protocol. The hearing panel consisted of two UNC Health Care employees trained for this function and a Chair who was a former Superior Court judge chosen by the parties.  (Docket No. 17,

---

[3] The administrative record is clear that Plaintiff raised these claims and disputed the relevant facts during the grievance proceedings.  *See* Pankey Aff. ¶ 11 and Attach. C, Hr'g Tr. at 22-28, 31, 35, 98, 111-112, 292, 324, and 363-364.  The Court may consider these documents on Defendants' motion to dismiss since they are cited in and are integral to Plaintiff's Complaint.

Affidavit of Aleyah Pryor Pankey ("Pankey Aff."), ¶¶ 4,6.) Plaintiff had the option to be represented by counsel; she elected instead to be assisted by a support person. Her supervisors did not have counsel. (*Id*. ¶¶ 5, 6.) Plaintiff exercised her right of discovery, witnesses were examined and cross-examined, documents were introduced, and the proceedings were recorded. After considering the evidence, the hearing panel made findings of fact and conclusions of law that were subsequently reviewed and accepted by the President of UNC Health Care. (*Id*. ¶ 13.)

This Court's review of the record regarding this process demonstrates that it clearly satisfies the *Elliott* criteria for a State agency acting in a judicial capacity. *Cf. United States v. Utah Constr. & Mining Co.*, 384 U.S. 394 (1966); *Layne v. Campbell County Dep't of Soc. Servs.*, 939 F.2d 217 (4th Cir. 1991). Plaintiff had a full and fair opportunity to litigate.[4] The hearing panel considered the entire record and found that there was insufficient evidence to support Plaintiff's contentions. After the review by UNC Health Care's President, Plaintiff had the right to petition the North Carolina courts for judicial review under N.C. Gen. Stat. § 150B-43, but she chose not to do so.

---

[4] Plaintiff notes that her discovery requests for several Defendants' personnel files were denied by the Chair of the hearing panel. The Chair found that Plaintiff had not shown a litigation need for the confidential personnel records. There is before this Court no basis for finding that such records would have been relevant to the issues before the hearing panel. Plaintiff states in her complaint that she wanted to see if her letters of complaint were present in the personnel files of several of the individual Defendants. This matter lacks materiality, however, and the panel made no finding adverse to Plaintiff on this point.

Under *Elliott*, the administrative decision unfavorable to Plaintiff must be given by this Court the same preclusive effect it would be entitled to in the North Carolina courts. *Elliott*, 478 U.S. at 799; *accord Dai,* 2003 WL 22113444, at *12. Under North Carolina law, collateral estoppel bars litigation of an issue when the same issue involving the same parties or parties in privity with them was raised, litigated, and determined in a prior proceeding, and the determination of the issue was material to the final outcome, even where the claims asserted are not the same. *Thomas M. McInnis & Assocs. v. Hall*, 318 N.C. 421, 427, 349 S.E.2d 552, 556 (1986); *McCallum v. N.C. Coop. Extension Serv.,* 142 N.C. App. 48, 54, 542 S.E.2d 227, 233 (2001). An essential fact that has been litigated and determined by an administrative decision is conclusive between the parties in a subsequent action. *Maines v. City of Greensboro*, 300 N.C. 126, 133, 265 S.E.2d 155, 160 (1980). Accordingly, Plaintiff Howard is estopped in this action from re-litigating the issues she presents in her § 1983 claims concerning race discrimination, retaliation, and deprivation of due process. *See King v. North Carolina Dep't of Transp.,* 121 N.C. App. 706, 711, 468 S.E.2d 486, 491 (1996); *Layne*, 939 F.2d at 219-21; *Dai*, 2003 WL 22113444, at *12 (dismissing Section 1983 claim against individual defendant on basis of collateral estoppel created by the plaintiff's grievance of his termination to the University of North Carolina at Chapel Hill faculty

grievance committee).[5]

In her *pro se* Complaint, Plaintiff appears to attempt to state a claim that Defendants deprived her of due process of law by conspiring to resist and defeat her application for unemployment benefits. However, the Court finds that Defendants are entitled to qualified immunity as to this claim. A finding of qualified immunity is proper if the facts alleged, taken in the light most favorable to the plaintiff, show that (1) the defendant official did not violate a constitutional right of the plaintiff, or (2) the right which plaintiff contends for was not clearly established at the time the defendant acted. *See generally Pearson v. Callahan*, 555 U.S. ___, 129 S. Ct. 808, 815 (2009). Under North Carolina law, an employer may terminate an employee for misconduct. N.C. Gen. Stat. § 96-14(2)(2009). Employers are permitted to protest a former employee's claim for unemployment benefits. N.C. Gen. Stat. § 96-15(b)(2). Accordingly, it is beyond argument that Defendants could not reasonably have known that their decision to exercise their right to resist Plaintiff's application for unemployment benefits could be violative of Plaintiff's constitutional rights.[6]

---

[5] Additionally, Plaintiff's § 1983 claim against the individual Defendants is premised upon an alleged deprivation of due process. The preclusive effect of the grievance decision is that Plaintiff received due process and was terminated for cause. Because Plaintiff's § 1983claims against the individual Defendants are factually premised upon a wrongful discharge, Plaintiff is left with no cognizable claims. *See Layne*, 939 F.2d at 221-22.

[6] Obviously, the Court does not find that such action by Defendants would violate Plaintiff's rights; the Court merely finds that Defendants are entitled to qualified immunity because Plaintiff cannot meet one prong of the qualified immunity test – that Defendants should have known that they were violating a clearly established right of the Plaintiff.

Finally, Plaintiff states a separate claim that Defendants deprived her of due process because her request for discovery of personnel records was denied during the administrative review of her termination. However, there is, and can be, no allegation that any Defendant was responsible for determining under what conditions Plaintiff could be given the documents she requested under the auspices of the hearing panel. Nor does she show that she availed herself of other methods to obtain documents in question. *See* N.C. Gen. Stat. § 126-29. Plaintiff states no plausible claim against any Defendant in this action. *See Ashcroft v. Iqbal*, 129 S. Ct. at 1949.

## 5. <u>Plaintiff's other motions</u>

Plaintiff Howard has filed a "Motion to Amend Civil Complaint to Enter Federal Question?" (Docket No. 25.) The document literally poses questions, such as "What laws govern when Plaintiff confides in Defendants UNC Health Care System et. al., in good faith and fair dealing and this covenant is breached?" On review of the document, the Court finds no basis for a pleading amendment. **IT IS ORDERED** that the "motion to amend" (Docket No. 25) is **DENIED** as futile.

Plaintiff has also filed a "Motion to the Court for Substantial Evidence for the Discrimination and Retaliation Complaint filed October 15, 2008." (Docket No. 26.) The "motion" in part recites evidence on the issue of discrimination in Plaintiff's termination and in part complains of the EEOC investigation into her claim. The Court has considered the

-13-

motion, but finds that it adds no relevant information concerning Defendants' motion to dismiss or any other matter before the Court. The "motion" (Docket No. 26) is **DENIED**.

## Conclusion

For reasons set forth above, **IT IS ORDERED** that Plaintiff' motions (Docket Nos. 25 and 26) are **DENIED**. Further, **IT IS RECOMMENDED** that Defendants' motion to dismiss (Docket No. 17) be granted in its entirety and that this action be dismissed with prejudice.

_____
/s/ P. Trevor Sharp
United States Magistrate Judge

Date:  September 7, 2010